UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:17-CR-00062-PLR |
| | ) | |
| vs. | ) | |
| | ) | |
| DIEGO GONZALEZ LOPEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

Defendant Diego Gonzalez Lopez ("Lopez") has filed a motion to dismiss the indictment [Doc. 11]. The Government has filed its response in opposition [Doc. 13]. This matter is before the Court pursuant to 28 U.S.C. § 636 and standing orders of the District Court for a Report and Recommendation. On July 26, 2017, the Court conducted a hearing on the motion. For the reasons stated, the Court recommends the Motion be DENIED.

**I.   BACKGROUND**

Lopez is a Mexican citizen. His parents brought him here illegally when he was only four years old. He has remained here since. He graduated from high school and even received some college education in the United States. Because he was here illegally, in March 2016, he applied for consideration under Deferred Action for Childhood Arrivals[1] ("DACA"). On January 26, 2017, U.S. Citizenship and Immigration Services ("USCIS") approved Lopez's application for deferred action under DACA and authorized him to work.

---

[1]   As is more fully explained later, DACA is a method of exercising prosecutorial discretion not to remove certain illegal aliens who have met criteria established by Department of Homeland Security for a specified period of time.

On April 8, 2017, Lopez was arrested for Driving Under the Influence. In his vehicle, officers found a 9mm semi-automatic pistol, 12 gauge shotgun and 9mm ammunition. On May 18, 2017, Enforcement Removal Officers ("EROs") arrested Lopez and began deportation proceedings. On June 13, 2017, a federal grand jury returned an indictment, charging Lopez with possessing firearms as an "alien illegally and unlawfully in the United States" in violation of 18 U.S.C. § 922(g)(5)[2] [Doc. 7].

At the hearing, the government introduced the letter from USCIS approving Lopez's DACA status. *See* Exhibit 1, [Doc. 17]. This approval letter indicated that the USCIS had exercised its "prosecutorial discretion" to not pursue the removal of Lopez for a specific period of time. The letter warned Lopez that this deferral did "not confer or alter any immigration status." *Id.*

## II.   LOPEZ'S MOTION TO DISMISS

Lopez argues that the indictment is legally insufficient and must be dismissed for four reasons. [Doc. 11]. First, he argues that because USCIS approved his application under DACA, he is no longer "illegally or unlawfully" present in the United States as 18 U.S.C. § 922(g)(5) requires. Second, he argues that the indictment is fatally defective for alleging that Lopez was both "illegally and unlawfully" in the United States where section 922(g)(5) requires only "illegally or unlawfully." Third, he argues that the rule of lenity should be applied in interpreting the terms "illegal or unlawful." [Doc. 11, pg. 8]. Finally, Lopez argues that 18 U.S.C. § 922(g)(5)(A) is unconstitutional as it is void for vagueness in the absence of a statutory definition of "illegally and unlawfully."

---

[2] 18 U.S.C. § 922(g)(5) makes it unlawful for a person to possess a firearm "who, being an alien is illegally or unlawfully in the United States…."

### III. ANALYSIS

#### A. Lopez's immigration status under DACA does not confer the right to possess firearms under 18 U.S.C. § 922(g)(5).

On June 15, 2012, the Secretary of Homeland Security Janet Napolitano issued a Memorandum entitled *Exercising Prosecutorial Discretion With Respect to Individuals Who Came to the United States as Children* (the "Memorandum").[3] The purpose of the Memorandum was to implement policy measures to assist in ensuring immigration enforcement resources were not expended on "low priority cases" in lieu of focusing on individuals who met enforcement priorities. *Id.* This policy became known as Deferred Action for Childhood Arrivals or "DACA." The Memorandum established a policy to defer removal proceedings for two years, subject to renewal, of persons who came to the United States as children, who met certain other eligibility requirements. *Id*. at 1-2. The Memorandum cautioned that it "confer[ed] no substantive right, immigration status or pathway to citizenship. Only Congress, acting through its legislative authority, can confer these rights." *Id.*

Lopez argues his status under DACA confers to him lawful immigration status in the United States, that his status under DACA "necessarily has the force and effect of law that permits an individual to legally and lawfully remain in this country for a temporary period of time." [Doc. 11, pg. 5]. The Court notes that the terms of the memorandum creating DACA do not support Lopez's argument. The Memorandum's focus is on "how, in the exercise of … prosecutorial discretion, [DHS] should enforce the Nation's immigration laws against certain young people who were brought to this country as children and know only this country as home." *Id.* DACA, by its

---

[3] As of August 14, 2017, this memorandum may be found at the following URL address: https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf.

own terms, relates only to the discretion exercised by DHS.  That DHS elects to defer the initiation of removal proceedings of someone here illegally does not change that individual's immigration status.

Lopez also asks the Court to treat DACA recipients like other courts have treated aliens approved for Temporary Protected Status ("TPS").  TPS is not the same as DACA.  "The Attorney General may designate a foreign state for TPS if the state is experiencing ongoing armed conflict, environmental disaster, or other extraordinary and temporary conditions. See 8 U.S.C. § 1254a(b).  An alien who is a national of a foreign state designated for TPS may apply for temporary protected status, which protects the alien from removal during the period in which the state's TPS remains in effect. 8 U.S.C. § 1254a(a)."  *Hernandez v. Holder*, 457 F. App'x 487, 489 (6th Cir. 2012).  If an alien has temporary protected status, then the alien has "lawful status" in the United States.  In fact, the alien receives an adjustment and change of status as a result of receiving TPS. "[T]he alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C.A. § 1254a(f)(4).  Unlike TPS, DACA was not created by Congress and does not purport to create any substantive rights nor change the immigration status of those to whom it applies. Rather, it is a method that informs the way in which DHS elects to allocate resources to remove illegal aliens from the United States.

This change in immigration status is crucial to the analysis.  In *United States v. Orellana*, 405 F.3d 360 (5th Cir. 2005), Orellana had received temporary protected status.  He later was charged with a section 922(g)(5) violation for possessing a firearm.  He argued his temporary protected status changed his immigration status to "lawful."  Thus, he fell outside of the firearm prohibition in section 922(g)(5).  The Fifth Circuit agreed.  It found that Congress intended those with temporary protected status to have "lawful status" in the United States.  Section 922(g)(5)

criminalizes the possession of firearms by those aliens here "illegally or unlawfully." It would not apply to those here lawfully. It ultimately concluded that it "[could not] say with certainty that Congress intended to criminalize the possession of firearms by aliens who have been granted temporary protected status." *Orellana,* 405 F.3d at 370-71. It utilized the rule of lenity and dismissed the indictment.

There are significant differences between treatment under DACA and treatment for those who have received temporary protected status. DACA is a memorandum from the Secretary of DHS that addresses prosecutorial discretion to defer taking action on an alien here illegally. It specifically, by its own terms, creates no substantive rights and does not purport to change an alien's immigration status – unlike TPS. To be sure, those under DACA do receive certain collateral benefits, much like those with temporary protected status, such as being able to work and obtaining a driver's license. But receiving collateral benefits because of their status under DACA does not change the alien's immigration status. Indeed, the Fifth Circuit noted in *Orellana*, "[r]eceipt of temporary benefits such as employment authorization or a temporary stay of removal does not render an otherwise illegal alien's presence lawful." *Orellana*, 405 F.3d at 370.

To the extent there was any doubt about whether DACA changed an alien's immigration status, the Fifth Circuit removed those doubts on July 7, 2017. On that date, the Fifth Circuit decided *United States v. Arrieta*, 862 F.3d 512 (5th Cir. 2017). Arrieta was under DACA and was charged with a section 922(g)(5) violation. He argued that DACA changed his immigration status such that section 922(g)(5) no longer criminalized his possession of firearms. The Fifth Circuit disagreed. It doing so, it distinguished temporary protected status from DACA by noting that, DACA did not create any "lawful immigration status." TPS did. This distinction was determinative. It held that "immigration 'status' is the key factor in determining the applicability

of Section 922(g)(5)(A)." *Arrieta*, 862 F.3d at 515. Because DACA did not change the alien's immigration status, the indictment charging a violation of Section 922(g)(5) was sufficient.

Lopez argues that the benefits he receives under DACA means "that [his] continued presence is necessarily lawful, even though [his] literal immigration status may not change." [Doc. 11, pg. 6]. *Arrieta* rejected that argument as did the Court is *Orellana.*[4] It is not the receipt of benefits that is determinative, it is lawful status. Because Arrieta lacked lawful status, Section 922(g)(5)(A) applied. *Id.* at 516. The Court finds the reasoning of *Arrieta* and *Orellana* persuasive. DACA does not change Lopez's immigration status. This issue is without merit.

### B. The indictment's use of "illegally *and* unlawfully"

Lopez argues the indictment is fatally flawed because it charges Lopez in the conjunctive but section 922(g)(5) is written in the disjunctive. That is, the indictment alleges Lopez was "illegally and unlawfully" in the United States when he possessed the firearms at issue whereas section 922(g)(5) only references "illegally *or* unlawfully."

The Sixth Circuit has observed that "[i]t is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the defense disjunctively." *United States v. Murph,* 707 F.2d 895, 896 (6th Cir. 1983); *see also United States v. Pirosko*, 787 F.3d 358, 368 (6th Cir. 2015). Accordingly, the Court finds the use of conjunctive language cannot support dismissal of the indictment. This issue is without merit.

### C. The rule of lenity

Lopez argues that his presence here was not either illegal or unlawful because he was authorized to remain in the United States under DACA. [Doc. 11, pg. 10]. He asks the Court to

---

[4] Indeed, in *Orellana,* the Court made a point to note that the receipt of benefits had no impact on whether an illegal alien's presence here is lawful.

apply the rule of lenity, claiming that DACA creates an ambiguity in his immigration status, and dismiss the indictment. "When ambiguity clouds the meaning of a criminal statute, 'the tie must to go the defendant.'" *United States v. Ford*, 560 F.3d 420, 425 (6th Cir. 2009)(quoting *United States v. Santos*, 553 U.S. 507, 128 S.Ct. 2020, 2025, 170 L.Ed.2d 912 (2008) (plurality); see also *United States v. White*, 846 F.3d 170, 175 (6th Cir.), *cert. denied*, 137 S. Ct. 2203, 198 L. Ed. 2d 267 (2017)("the rule of lenity … requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.)(quotations and citations omitted).

In this case, there is no statutory ambiguity regarding section 922(g)(5) as applied to Lopez. As already discussed, DACA created no substantive rights and did not purport to change Lopez's immigration status. Under DACA, DHS elects to exercise its prosecutorial discretion with respect to certain illegal aliens and not to take immediate action to remove them. In doing so, it was explicit that it did not change Lopez's immigration status. Lopez is still here illegally and unlawfully, and section 922(g)(5) still applies. This issue is without merit.

### D.     18 U.S.C. § 922(g)(5) is not unconstitutionally void for vagueness

Lopez argues that section 922(g)(5) is unconstitutionally vague. He cites to no authority that has held section 922(g)(5) unconstitutional for vagueness. In any event, the Supreme Court has held that "the Due Process Clause prohibits the Government from 'taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.'" *Beckles v. United States*, 137 S. Ct. 886, 892, 197 L. Ed. 2d 145 (2017)(quoting *Johnson v. United States*, 576 U.S. ——, 135 S.Ct. 2551, 2556, 192 L.Ed.2d 569 (2015)). It explained that "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage

arbitrary and discriminatory enforcement." *Id.* (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)).

Section 922(g)(5) provides that it is unlawful for a person, "who, being an alien … is illegally or unlawfully in the United States" to possess a firearm. Lopez argues that "[d]ue to the absence of a stated standard, it remains unclear as to whether Congress intended to include deferred action recipients within … [the scope of Section 922(g)(5)]." [Doc. 11, pg. 14]. This argument fails for two reasons. First, Congress did not create DACA. It is a creature of administrative making. Second, while the terms "illegal and unlawful" are not defined in the statute, there is no doubt as to how they apply to Lopez's circumstances. That he applied for DACA demonstrates that he had notice of his unlawful status. To apply for DACA, the alien must concede he or she is present in the United States illegally. A reasonable person of ordinary intelligence would understand that his status had not, in fact, been adjusted as a result of his receiving DACA status. DACA did not muddy the waters. Lopez is present in the United States illegally before and after receiving DACA status. The only difference is DHS had elected at the time of the offense not to pursue removal proceedings. The Court finds no merit to Lopez's void-for-vagueness challenge to section 922(g)(5). This issue is without merit.

## IV. RECOMMENDATION

The undersigned recommends the Court **DENY** Lopez's motion to dismiss the indictment [Doc 11].[5] Given the rapidly approaching trial date of August 29, 2017, **the period of time to file objections is hereby shortened to seven days. Failure to object to this Report and Recommendation within that time period will waive the objections.**

---

[5] Any objections to this Report and Recommendation must be served and filed within **seven days** after service or further appeal will be waived. 28 U.S.C. 636(b)(1); Fed. R. Crim. P. 59(b)(2). Such objections shall confirm to the requirements of Rule 59(b).

Respectfully Submitted,

s/Clifton L. Corker
United States Magistrate Judge