**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**GREENEVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **No. 2:17-CR-62** |
| | ) | **REEVES/CORKER** |
| **DIEGO GONZALEZ LOPEZ,** | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OPINION AND ORDER

On August 14, 2017, the Honorable Judge Clifton L. Corker, United States Magistrate Judge, entered a Report and Recommendation ("R&R") [D. 28] in which he recommended that the Court deny Defendant Diego Gonzalez Lopez's motion to dismiss the indictment [D. 11]. This matter is presently before the Court on Mr. Lopez's objection to the R&R [D. 29], which the government opposes [D. 30]. For the reasons that follow, the R&R will be accepted in part and overruled in part, and the motion to dismiss the indictment will be granted.

Mr. Lopez was brought to the United States illegally when he was four years old. In January 2017, he was approved for deferred status under the Deferred Action for Childhood Arrivals (DACA) administrative program.[1] On April 8, 2017, Mr. Lopez was arrested for driving under the influence, and law enforcement officers found two firearms and ammunition in his vehicle. The United States Citizenship and Immigration Services (USCIS) consequently terminated his DACA authorization, effective May 18, 2017. On June 13, 2017, a federal grand jury indicted Mr. Lopez

---

[1] Memorandum from Janet Napolitano, Sec'y of Dep't of Homeland Sec., Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children (June 15, 2012), http://www.dhs.gov/ xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf.

on one count of knowingly possessing firearms as "an alien illegally and unlawfully in the United States," in violation of 18 U.S.C. § 922(g)(5) [D. 7].

Mr. Lopez challenges the indictment on grounds that he was not "illegally or unlawfully" in the United States at the time of his arrest, in light of his then-active DACA authorization. In the alternative, Mr. Lopez alleges that 18 U.S.C. § 922(g)(5) is unconstitutionally vague as applied to him. On July 26, 2017, a hearing on Mr. Lopez's motion to dismiss the indictment was held before Magistrate Judge Corker, who recommended that the Court deny the motion. In his timely objection to the R&R [D. 29], Mr. Lopez contends that Magistrate Judge Corker erred in two interlocking ways: (1) by confining his analysis of the phrase "illegally and unlawfully in the United States" under 18 U.S.C. § 922(g)(5) to the civil standard provided in the Immigration and Naturalization Act (INA), and (2) by relying on this immigration-related definition to reach the conclusion that the statute is not void for vagueness.[2] The Court will address each of Mr. Lopez's objections in turn.

## I.  Interpretation of "Illegally or Unlawfully in the United States"

Mr. Lopez first contends that because § 922(g)(5) does not define "illegally or unlawfully in the United States," the Court should interpret those words based solely on their plain meaning. According to Mr. Lopez, the phrase refers only to lawful presence, not alien status, and so any reliance on INA standards is inappropriate. Under his interpretation, the fact that "a DACA recipient may not have lawful immigration *status* under the INA … does not necessarily mean that their *presence* in the United States remains illegal or unlawful." [D. 29, at 3 (emphasis added)].

---

[2] Mr. Lopez also argues that Magistrate Judge Corker inappropriately treated his as-applied challenge as a facial one. The Court will address Mr. Lopez's underlying vagueness argument. When a party objects to the magistrate's R&R on a dispositive matter, the district judge "shall make a de novo determination of those portions of the report . . . to which objection is made."  28 U.S.C. § 636(b).

In interpreting a criminal statute, courts "must follow the plain and unambiguous meaning of the statutory language." *United States v. Roman*, 795 F.3d 511, 516 (6th Cir. 2015) (quoting *Salinas v. United States,* 522 U.S. 52, 57 (1997)). But here, the precise meaning of § 922(g)(5) is *not* unambiguous, at least as applied in the deferred action context.[3] On the one hand, "illegally or unlawfully *in* the United States" could be read to apply to all individuals without any form of legal immigration status. Alternately, it could be read to exclude from its ambit those individuals who are considered lawfully present, even if they lack formal legal status. Based on the plain language alone, either interpretation is reasonable. Under the latter interpretation, the statutory prohibition would arguably *not* apply to DACA recipients, who the Department of Homeland Security and USCIS consider to be "lawfully present during the period deferred action is in effect." USCIS, *Frequently Asked Questions* (Archived), https://www.uscis.gov/archive/frequently-asked-questions (last visited Nov. 30, 2017).

The statute does not provide a definition for the contested phrase, and the legislative history provides few, if any, clues as to Congress's intent regarding either its interpretation or its application in the deferred action context. *See United States v. Lopez-Perera*, 438 F.3d 932, 933-34 (9th Cir. 2006) (discussing legislative silence as to the meaning of "illegally or unlawfully in the United States"). The fact that DACA is an executive policy, and not a Congressional enactment, does not automatically mean that Congress did not consider the potential impact of the statute on deferred action recipients. After all, deferred action has been a part of immigration policy for more than four decades,[4] and Congress has at least implicitly approved similar administrative programs.[5]

---

[3] Magistrate Judge Corker found that "there is no statutory ambiguity regarding section 922(g)(5) as applied to Lopez." [D. 28, at 7]. But this finding came only *after* Judge Corker interpreted the statute in light of immigration law to refer to alien status. Mr. Lopez challenges this method of interpretation.

[4] *See, e.g,*, INS, Operation Instructions § 103.1(a)(1)(ii) (1975) (discussing recommendations for deferred action).

[5] For instance, in the late 1980s, the Reagan and Bush administrations implemented the Family Fairness policy, which deferred deportation for the spouses and children of aliens that were in the process of obtaining legal status.

When the precise meaning of a statute is unclear, a court can look to numerous sources for guidance, including the broader statutory context and interpretations by the agency tasked with enforcing that statute. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Terrell v. United States*, 564 F.3d 442, 449 (6th Cir. 2009). Turning first to the statutory context, the Court notes that numerous cross-references to immigration law and INA definitions are found throughout the statute, including in the subsections immediately surrounding § 922(g)(5)(A). *See, e.g.*, 18 U.S.C. §§ 922(g)(B) (cross-referencing section 101(a)(26) of the INA for the definition of a "nonimmigrant visa"), 922(y) (stating that "alien" in this section and in subsection (d)(5)(B) has the same meaning as in section 101(a)(3) of the INA). But, as Mr. Lopez points out, Congress could easily have added language in § 922(g)(5) directing readers to interpret that particular subsection in light of INA definitions, as well. As the Supreme Court has stated, "when Congress includes particular language in one section of a statute but omits it in another—let alone in the very next provision—this Court presumes that Congress intended a difference in meaning." *Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) (citing other sources) (cleaned up). That meaning, however, must still be discerned.

The Bureau of Alcohol, Tobacco, and Firearms (BATF)—the agency charged with administering the statute[6]—tackled this very issue in 1997. After assisting Congress in crafting the

---

When Congress later enshrined this policy into law in the Immigration Act of 1990, Congress expressly stated that "the delay in effectiveness of this section shall not be construed as reflecting a Congressional belief that the existing family fairness program should be modified in any way before such date." Pub. L. No. 101-649, § 301(g) (1990).

[6] "[T]he Crime Control Act delegates rulemaking authority to the Secretary of the Treasury. 18 U.S.C. § 926. The Secretary, in turn, has delegated that authority to the BATF, which has the authority to make rules designating in greater specificity the requirements of the statute." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 292 (6th Cir. 1997) (citing Treas. Dep't Order No. 221, 37 Fed. Reg. 11696, 11696-11697 (1972); 27 C.F.R. Part 178).

statute,[7] the BATF promulgated a regulation defining the categories of prohibited persons under

§ 922(g), including what it means to be "illegally or unlawfully in the United States":

> Aliens who are unlawfully *in* the United States are *not* in valid immigrant, nonimmigrant or parole *status*. The term *includes* any alien—
>
> (a) Who unlawfully entered the United States without inspection and authorization by an immigration officer and who has not been paroled into the United States under section 212(d)(5) of the Immigration and Nationality Act (INA);
>
> (b) Who is a nonimmigrant and whose authorized period of stay has expired or who has violated the terms of the nonimmigrant category in which he or she was admitted;
>
> (c) Paroled under INA section 212(d)(5) whose authorized period of parole has expired or whose parole status has been terminated; or
>
> (d) Under an order of deportation, exclusion, or removal, or under an order to depart the United States voluntarily, whether or not he or she has left the United States.

27 C.F.R. § 478.11 (emphasis added). The BATF explicitly adopted this definition "[to] reflect the

terminology used in the Immigration and Nationality Act," which uses "specific legal terms to

refer to the status of aliens in the United States." Definitions for the Categories of Persons

Prohibited From Receiving Firearms, 62 Fed. Reg. 34,634, 34,637 (June 27, 1997) (codified at 27

C.F.R. § 478.11). According to this regulation, the applicability of § 922(g)(5) depends on an

individual's legal immigration status, and not just whether her presence in the country is

temporarily authorized.

---

[7] The language of the Senate Bill was "worked out in conjunction with the Bureau," and the BATF "required" at least one specific provision. 132 CONG. REC. H1649-03 (1968) (statement of Rep. Volkmer).

There is some debate over whether and how much deference should be given to an agency interpretation of a criminal statute.[8] The Sixth Circuit has held that *Chevron*[9] deference *is* acceptable in the criminal context, at least until the Supreme Court says otherwise. *See Esquivel-Quintana v. Lynch*, 810 F.3d 1019, 1024 (6th Cir. 2016), *rev'd on other grounds by Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017).[10] But even if full *Chevron* deference is inapplicable,[11] this Court nevertheless agrees with the BATF's interpretation of § 922(g)(5) and with the four other circuits that have afforded the regulation at least some level of deference. *United States v. Rehaif*, 868 F.3d 907, 915 (11th Cir. 2017) (noting that any ambiguity in § 922(g)(5)(A) is resolved by reference to the BATF's interpretation); *United States v. Lopez-Perera*, 438 F.3d 932, 934 (9th Cir. 2006) (*Chevron* deference); *United States v. Flores*, 404 F.3d 320, 326-27 (5th Cir. 2005) ("at least some degree of deference"); *United States v. Atandi*, 376 F.3d 1186, 1189 (10th Cir. 2004) ("some deference"). And as the Ninth Circuit found in a similar case, "no part of § 922(g)(5)(A)'s legislative history indicates that the decision to use immigration law definitions is one that Congress would not sanction." *Lopez-Perara*, 438 F.3d 932, 936 (9th Cir. 2006). This Court agrees. Accordingly, Mr. Lopez's first objection regarding the interpretation of § 922(g)(5)(A) is overruled, and the portion of the R&R that deals with this matter is accepted.

---

[8] *E.g.*, *United States v. Orellana*, 405 F.3d 360, 369 (5th Cir. 2005) ("[A]lthough some deference is due an agency's interpretation of a criminal statute, the level of deference … is uncertain…."); *United States v. Gayle*, 342 F.3d 89, 93 n. 4 (2d Cir. 2003), *as amended* (Jan. 7, 2004) (noting that "both parties agreed that ATF's interpretation of a criminal statute is not entitled to deference under *Chevron*, even if the statute were ambiguous").

[9] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

[10] For support, the Sixth Circuit cited to *Babbit v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 703 (1995), in which the Supreme Court deferred to the agency's interpretation of an Endangered Species Act provision that imposed criminal liability. *Esquivel-Quintana v. Lynch*, 810 F.3d 1019, 1024 (6th Cir. 2016). Judge Sutton disagreed with the majority's conclusion. *Id.* at 1027 (Sutton, J., concurring in part and dissenting in part).

[11] The Court is not convinced that the logic in *Esquivel-Quintana* applies in every context. In that case, the Sixth Circuit drew on Supreme Court precedent to conclude that the Board of Immigration Appeals' interpretation of immigration law was entitled to *Chevron* deference. 810 F.3d 1019, 1024 (6th Cir.). It is unclear whether the same level of deference is appropriate when the agency doing the interpreting is the BATF, whose "field of expertise lies outside the realm of immigration law." *United States v. Orellana*, 405 F.3d 360, 369 (5th Cir. 2005).

## II. As Applied Void-for-Vagueness Challenge

Mr. Lopez alternately argues that even if the indictment is not fatally defective, § 922(g)(5) is unconstitutionally vague as applied to deferred action recipients such as himself. He contends that because the statute does not itself define what it means to be "illegally or unlawfully in the United States," its application in the context of DACA is unclear. Mr. Lopez argues that the plain language of "illegally or unlawfully *in* the United States" could reasonably be read to refer to *either* lawful presence or official immigration status. This uncertainty, in turn, raises the specter of selective enforcement: "it is more than conceivable that law enforcement officers around the nation have stopped aliens for firearm possession and set them free upon discovering that they were lawfully permitted to remain in the U.S. pursuant to DACA." [D. 29, at 6]. Accordingly, Mr. Lopez argues that the court should apply the rule of lenity, which directs a court to resolve any ambiguities in a criminal statute in favor of the defendant. *United States v. Lechner*, 806 F.3d 869, 874 (6th Cir. 2015) (citing *United States v. Bass*, 404 U.S. 336, 348 (1971)).

Of course, "[a] statute does not become unconstitutionally vague simply because a term is undefined." *United States v. Walli*, 2013 WL 1838159, at *4 (E.D. Tenn. Apr. 30, 2013). But the statutory prohibition must be specific *enough* "so that ordinary people, exercising ordinary common sense, can understand it and avoid conduct which is prohibited, without encouragement of arbitrary and discriminatory enforcement." *United States v. Salisbury*, 983 F.2d 1369, 1378 (6th Cir. 1993). In other words, where a statute is "so indefinitely defined that a reasonable defendant, at the time she was charged, could not reasonably foresee a future judicial construction proscribing her conduct, … it is inappropriate for a court to … retroactively apply the construction to conduct which occurred prior to its holding." *United States v. Salisbury*, 983 F.2d 1369, 1380 (6th Cir. 1993). The Supreme Court has held that the "more important aspect of vagueness doctrine" is "the

requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)).

It cannot be said that § 922(g)(5) is so indefinitely defined that it fails to establish minimal guidelines; its plain language clearly applies to individuals with no authorization whatsoever to remain in the United States. But a statute with language that seems relatively easy to apply in certain contexts can nonetheless be unconstitutionally vague in others. As the Sixth Circuit has explained, "[t]his is so because, though the terms and judicial constructions of a statute may make it apply unquestionably to certain activities, its application to *other* activities may remain uncertain due to the absence of a stated standard for inclusion or exclusion of activities from its scope." *United States v. Salisbury*, 983 F.2d 1369, 1378 (6th Cir. 1993) (emphasis added). In this case, the categories of prohibited persons, rather than conduct, is at issue, but the same analysis applies. *See Winters v. New York*, 333 U.S. 507, 515-16 (1948) ("The vagueness [in a statute] may be from uncertainty in regard to persons within the scope of the act....").

The Court has today determined that the category of prohibited persons referenced in § 922(g)(5)(A) is to be defined according to alien status. Because DACA does not affect legal status (only lawful presence), it follows that an individual with DACA authorization is not immune from prosecution under the statute. But this is all a matter of statutory interpretation, and, before today, no court in the Sixth Circuit has explicitly interpreted the meaning of § 922(g)(5) in this context.[12] So the question remains: could a reasonable person of ordinary intelligence be expected to have connected the dots in this manner, in this particular context, before this Court had even done so? To be more precise, would an ordinary person understand that a DACA recipient—who

---

[12] The United States District Court for the Western District of Michigan heard a very similar case involving a DACA recipient challenging his indictment for violating § 922(g)(5)(A), but dismissed the defendant's motion as untimely. The Sixth Circuit affirmed the denial without deciding the merits of the defendant's argument. *United States v. Trujillo-Molina*, 678 F. App'x 335, 338-39 (6th Cir. 2017).

is considered lawfully present in the United States for at least some purposes—is still "illegally or unlawfully in the United States" for purposes of § 922(g)(5)(A)? This Court thinks not. At the very least, this conclusion is too uncertain to support criminal liability in this case. "Before a man can be punished as a criminal under the Federal law his case must be *'plainly and unmistakably'* within the provisions of some statute." *United States v. Gradwell*, 243 U.S. 476, 485 (1917) (emphasis added) (citing *United States v. Lacher*, 134 U.S. 624, 628 (1890)). That is not the situation here.[13] Because "the plain language, structure, and legislative history [of § 922(g)(5)] provide no guidance" on this precise issue, the rule of lenity applies, and the ambiguity will be resolved in favor of the defendant in this case. *United States v. King,* 516 F.3d 425, 432 (6th Cir.2008) (quoting *United States v. Wagner,* 382 F.3d 598, 610 (6th Cir.2004)).

As for the selective enforcement argument, the Court agrees with Mr. Lopez that "it is more than possible … that aliens in similar circumstances to Mr. Lopez have not been charged for similar crimes on the basis of their deferred status." [D. 29, at 7]. And because "[t]he root of the vagueness doctrine is a rough idea of fairness," the Court now finds that § 922(g)(5)(A) is unconstitutionally vague as applied to Mr. Lopez. *Colten v. Kentucky*, 407 U.S. 104, 110 (1972). The Court's construction today clarifies the law for future potential defendants, *including* individuals with DACA authorization.

---

[13] The USCIS website notes that "[a]part from the immigration laws, 'lawful presence,' 'lawful status' and similar terms are used in various other federal and state laws," and directs DACA recipients to "contact the appropriate federal, state or local authorities" for guidance on how those laws may affect them. USCIS, *Frequently Asked Questions* (Archived), https://www.uscis.gov/archive/frequently-asked-questions (last visited Nov. 17, 2017) (emphasis added). But the Court does not find that this instruction is sufficient to put DACA recipients like Mr. Lopez on notice that 18 U.S.C. § 922(g)(5)(A) would be judicially construed to apply to them. Notice must be drawn from the statute and case law. And particularly given the lack of case law in this area, federal authorities would likely have been unable to give more than limited guidance.

Accordingly, the Court **ACCEPTS IN PART** and **REJECTS IN PART** the R&R under 28 U.S.C. § 636(b)(1), and Mr. Lopez's motion to dismiss the indictment [D. 11] is **GRANTED**. The indictment [D. 7] as to Diego Gonzalez Lopez is hereby **DISMISSED**.

    **IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**